[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S POST JUDGMENT MOTION FOR MODIFICATION
The defendant has moved by way of citation served upon the plaintiff on October 12, 2001, for modification of the court's alimony order entered on June 7, 2000. The judgment of dissolution of the parties' marriage was entered on that date before the Honorable Lloyd Cutsumpas. A separation agreement executed by the parties was filed on that date and its provisions were incorporated in the judgment. The agreement provided, inter alia, for alimony in the amount of $4,583.33 per month to be paid to the plaintiff. The defendant has now lost his job and seeks a modification.
This motion is filed pursuant to the provisions of § 46b-86 (a) of the General Statutes. That section of the statutes permits a modification of any final order for the periodic payment of permanent alimony to be modified upon a showing of a substantial change in the circumstances of either party. The court finds in this case a substantial change in the defendant's circumstances by reason of his loss of his former position. In determining what a proper order might be, the court shall consider the factors of § 46b-82 of the General Statutes which include the length of the marriage, age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. The court has considered these factors in arriving at the modification in this matter.
The parties were married in 1972 so that at the time of the decree of dissolution it had been a 28 year marriage. The defendant is 52 years of age and in good health. At the time of the decree of dissolution he was employed as the Chief Executive Officer at ICD International Center for the Disabled in New York City. He received a salary of $205,000. In the year 2000, he received $211,000 from ICD (see plaintiff's exhibit C). His position at ICD terminated on May 18, 2001. He was paid severance to November 7, 2001. His termination was unexpected and involuntary. CT Page 12543
The defendant has worked entirely in the health care and management field and has been so employed since 1970. He has a masters and a doctorate degree. His employment has always been in the nonprofit sector of health management. He has been actively seeking other employment since his termination. He testified that it was a very difficult market for jobs in his area of expertise and there were no jobs available appropriate for his qualifications. In a stipulation dated December 6, 2001, the parties agreed that the alimony order might be reduced to $2,000 per month effective November 7 and continuing until the defendant obtained full-time employment or June 1, 2002, whichever first occurred. An order was entered in accordance with the parties' stipulation before the undersigned on that date. Subsequently, an order was entered continuing the $2,000 per month order to July 1.
The defendant is currently employed teaching at the University of Connecticut and earning a gross pay of $588 per week and an estimated $491 after deductions for items of withholding. He has assets of $143,000 excluding $199,100 which he received for his interest in the family home and which the parties agreed at the time was "protected."[1]
The plaintiff is 53 years of age and in generally good health. She is employed by Hollandia Nurseries in Bethel, Connecticut. She conducts perennial sales and engages in nursery propagation. Her job is now full time, and year round. At the time of the decree of dissolution, she was employed by Twomly Nursery. This was a part-time job. She was then earning $337 per week and a net after deductions for withholding of $286 per week.
The plaintiff holds a B.A. degree from the University of the Pacific. She did not work until the youngest child was in fourth grade. She then worked as the Director of Preschooling and earned $22,000 per year. Her desire for employment had always been in the nursery business, and she has been working in that field for two years. She is studying landscape design at New York Botanical Gardens leading to certification in Landscape Design. She earns $622 gross pay and $455 after withholding.
On September 18, 2001, the plaintiff purchased the defendant's interest in the family home. She paid $194,000 for his interest, and it is this sum which is noted on his financial affidavit as "protected."[2] The plaintiff's liquid assets were $28,000 plus an IRA account of $3,715.
The parties' youngest son, Jonathan, will be twenty years old in November. He is a student at the University of Colorado. The parties agreed in their separation agreement that the plaintiff would pay 20 percent of the college expenses and the defendant to pay 80 percent of the CT Page 12544 college expenses. College expenses for Jonathan since September, 2001 have been $8,000. Based upon the plaintiff's financial affidavit, her share of Jonathan's college expenses for the year amount to $6,500.
Health insurance is not offered to the plaintiff through her employment. Her health insurance cost is close to $3,000 per year. Additionally, she is paying one-half of Jonathan's medical insurance amounting to $62.00 per week.
Plaintiff's total expenses amount to $1,555 per week. Defendant's total expenses amount to $2,862 per week. Included in this amount, however, is $100 for legal costs, $89.00 for entertainment, $250 for care of his elderly mother, $450 for Jonathan's room and board and $200 for job search.
It is clear that there has been a substantial change in the defendant's circumstances. The defendant has been searching for a new position. (See defendant's exhibit 1.) As he has stated, there are no positions in his expertise available at the present time. Until the defendant obtains such a position, alimony is reduced to $1,000 per month. The sum of $1,000 per month is now due for July, August and September and will be due for the month of October. The court orders such sum of $4,000 to be paid on or before two weeks from this date.
It has been argued that an order should be entered based on the defendant's earning capacity. The court has found that the defendant did not voluntarily terminate his employment and that he has made a real effort to obtain employment. His current teaching assignment is only temporary until he can find another position in his field. The court declines to enter an order based on earning capacity in this matter.
It has been argued, too, that the plaintiff is underemployed. The court finds that she is working to her full capacity.
The defendant shall notify the plaintiff and her counsel within forty-eight (48) hours of his obtaining full time employment. Any further motions for modification will have to be re-filed and brought to the attention of the court for appropriate orders.
 EDGAR W. BASSICK, III JUDGE TRIAL REFEREE